IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

2:26-cv-01614-DCN

| | |
|---|---|
| Accredited Surety and Casualty Company, Inc.<br><br>    Plaintiff,<br><br>  vs.<br><br>El Alamo, LLC a/k/a El Chapin a/k/a El Alamo VIP and a/k/a El Alamo, and Hadley Harkins,<br><br>    Defendants. | CASE NO.: _____<br><br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

The Plaintiff, Accredited Surety and Casualty Company Inc. ("Accredited"), by and through the undersigned counsel, hereby submits its complaint for declaratory relief against Defendants El Alamo, LLC, also known as El Chapin LLC and also known as El Alamo VIP and El Alamo (hereinafter "El Alamo"), and Hadley Harkins and states as follows.

**Parties, Jurisdiction, Venue and Applicable Law**

1.     Accredited brings this action for declaratory judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 for a determination of its rights and obligations under that certain policy of insurance no. 1ABPSC05130582800.

2.     Accredited is an insurance company with its principal place of business in Orlando, Florida and organized as a corporation in that state. Accredited is authorized to transact business within the State of South Carolina and submits itself to the jurisdiction and venue of this Court for purposes of this declaratory judgment action only.

3.     At all times material to this action, upon information and belief, El Alamo was a South Carolina business which operated restaurants located in Summerville, County of Dorchester

1

South Carolina and North Charleston, County of Dorchester, South Carolina and was doing business at those locations.

4.     At all times material to this action, upon information and belief, Defendant Hadley Harkins was a citizen of South Carolina and a resident of Berkeley County, South Carolina. Defendant Harkins is named as a defendant in this action because he may claim an interest in the policy which is the subject of this declaratory judgment action.

5.     Jurisdiction is proper pursuant to 28 U.S.C. §§ 1332 and 1367 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00 exclusive of all fees and costs.

6.     Upon information and belief, a substantial part of the events or omissions giving rise to the claims described herein occurred in Dorchester County, South Carolina. Venue in this matter in the Charleston Division of the United States District Court for the District of South Carolina is proper under 28 U.S.C. § 1441(a) because this District and this Division includes Dorchester County, South Carolina, the location of the South Carolina state court action involving the Defendants.

7.     Pursuant to S.C. Code Ann. § 38-61-10, the issues in controversy in this action are governed by the laws of South Carolina.

**Factual Background**

THE UNDERLYING COMPLAINT

8.     On December 6, 2023, Defendant Harkins filed suit against El Alamo and Hailim Yissel Cabrera Navarro ("Navarro"), Civil Action No. 2023-CP-18-02086, in the Court of Common Pleas for Dorchester County, South Carolina ("the underlying complaint"). The

2

334106835v.1

underlying lawsuit is a "dram shop" action which alleged separate counts against El Alamo and Navarro and is attached as Exhibit A to this complaint.

9. The claims against El Alamo alleged "negligence, gross negligence & negligence per se, violation of S.C. Code Ann. §§ 61-4-580 and 61-6-2220, Dram Shop".

10. The underlying complaint alleged that El Alamo overserved alcohol to Navarro, who was involved in an automobile accident with Harkins on May 30, 2022. The underlying complaint does not identify which restaurant location allegedly overserved alcohol to Navarro. It further alleges that El Alamo did not train or supervise its employees properly in serving alcohol to patrons whom they knew or should have known were intoxicated. Harkins further claimed that El Alamo's conduct was negligent; negligent *per se*; willful, wanton, and grossly negligent; and proximately caused his injuries from the accident. Harkins sought actual and punitive damages against both defendants in the underlying complaint. Navarro has appeared through counsel in that action and answered with a denial of the allegations and other affirmative defenses.

11. As to El Alamo, Harkins has asserted that personal service of the underlying complaint was made upon "Benjamin Reyna (owner)" on behalf of El Alamo on February 9, 2024, although Accredited was not made aware of the service until June 30, 2025 – over seventeen (17) months later. See Feb. 9, 2024, Affidavit of Service filed April 5, 2024 attached as Exhibit B, affidavit of Edward Matera, ¶ 14, attached as Exhibit C and June 30, 2025 correspondence from Amy E. McLaren, Esquire, attached as Exhibit D.

12. On March 20, 2025, the Clerk of Court for the Dorchester County Court of Common Pleas entered default against El Alamo pursuant to Rule 55(a), SCRCP. See attached Exhibit E. Again, Accredited was not informed of the entry of default by Harkins, his counsel or the insured at that time. Exhibit C, ¶ 13.

334106835v.1

13.     According to Harkins' June 5, 2025, filing with the Circuit Court, his counsel mailed a letter to Benjamin Reyna on May 7, 2025 notifying him of the hearing date for the damages hearing.  *See* Exhibit F.  The address in the letter was the same address set forth in Harkins' affidavit of service.

14.     On June 5, 2025, the Honorable James E. Chellis, Master in Equity for Dorchester County, convened a default damages hearing.  No representative for El Alamo appeared at that hearing.  Following the hearing, on June 20, 2025, Judge Chellis entered a formal written order awarding $700,000.00 in actual damages to Harkins from El Alamo and $1 million in punitive damages.  Accredited was not informed of the entry of this judgment until June 30, 2025, when it received the letter from Harkins' attorneys demanding payment of a $1 million settlement of the claims against its insured or they would commence litigation against the insurance company for bad faith refusal to provide a defense.  *See* Exhibit C ¶¶ 10, 11, 12, 13 and 14.

15.     As set forth in Attachment A to Harkins' March 12, 2025, amended affidavit of default, Harkins had notice of the certificate of insurance – which identified Accredited as the carrier – before default was entered.  *See* Exhibit G.  Despite Harkins' attorney's possession of this information, no attempt was made to contact Accredited until his attorney sent the demand letter on June 30, 2025.

16.     As shown by the attached affidavit of Edward Matera, Accredited has been unable to contact Mr. Reyna despite timely and diligent efforts to do so.  Exhibit C, ¶ 16.  Although the June 30 correspondence was Accredited's first notice of the underlying action, Accredited sent correspondence to its insured at its last known address and a forwarding address subsequently provided by the Postal Service, which stated that it would move to set aside the initial default judgment and attempt to provide a defense for the named defendants, subject to a complete

4

reservation of its rights pending its investigation of the matter. *See* Exhibit H. Accredited retained attorney William H. Harkins, Jr. Esquire ("defense counsel") to contest the entry of default and to defend the insured in the state court if the entry of default was set aside, all pursuant to the carrier's reservation of rights.[1] Upon retention, defense counsel contacted Defendant Harkins' attorneys, who refused to vacate the default judgment.

17.     Defense counsel for El Alamo filed a motion to set aside the entry of default judgment on August 15, 2025. The Honorable James E. Chellis convened a hearing on the motion on October 13, 2025. Judge Chellis grant the motion and vacated the judgment in a bench ruling but did not enter a formal written order until December 18, 2025. In reliance upon the bench ruling, defense counsel for El Alamo filed a motion to set aside the entry of default on October 30, 2025. However, Judge Chellis denied the motion on April 13, 2026, and found that Defendant El Alamo did not show good cause to set aside the entry of default. The default judgment hearing for the purpose of awarding damages in the state court action is presently set for April 20, 2026.

THE ACCREDITED POLICY

18.     On or about December 19, 2021, Accredited issued policy no. 1ABPSC05130582800 to "El Chapin LLC". Subsequently, the insured changed the name of the policyholder to "El Alamo LLC."

19.     Upon information and belief, there is no entity previously or currently registered as a foreign or domestic limited liability company named "El Chapin LLC." Upon further information and belief, although El Alamo holds itself out as a limited liability company, there is no registration for a domestic South Carolina limited liability company in that name with the South Carolina Secretary of State. Additionally, upon further information and belief, there is no

---

[1] Attorney Harkins is no relation to Defendant Harkins.

5

334106835v.1

registration for a foreign limited liability company operating under a certificate of authority through that agency.

20.     The underlying insurance policy included the following provisions which are relevant to this declaratory judgment action:

SECTION II   LIABILITY

A. Coverages

1. Business Liability

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Paragraph D. Liability And Medical Expenses Limits Of Insurance in Section II Liability; and

(2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph f. Coverage Extension Supplementary Payments.

***

b. This insurance applies:

(1) To "bodily injury" or "property damage" only if:

(a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(b) The "bodily injury" or "property damage" occurs during the policy period;…

***

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have

6

334106835v.1

occurred by any insured listed under Paragraph C.1. Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d** . "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph C.1. Who Is an Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that the "bodily injury" or "property damage" has occurred or has begun to occur.

f. Coverage Extension   Supplementary Payments

   (1) We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   (a) All expenses we incur.

   ***

   (e) All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   (f) Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the Limit of Insurance, we will not pay any prejudgment interest based on that period of time

   (g) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the limit of liability.

***

B.    Who Is An Insured

 1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

7

b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors

***

E. Liability And Medical Expenses General Conditions

***

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
(1) How, when and where the "occurrence" or offense took place;
(2) The names and addresses of any injured persons and witnesses; and
(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

a. If a claim is made or "suit" is brought against any insured, you must:
   (1) Immediately record the specifics of the claim or "suit" and the date received; and
   (2) Notify us as soon as practicable

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

8

F.  Liability And Medical Expenses Definitions

\*\*\*

3.  "Bodily injury" means bodily injury, sickness or  disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

13. "Occurrence"  means  an  accident,  including  continuous  or repeated  exposure  to substantially  the  same  general  harmful conditions.

\*\*\*

18. "Suit"  means  a  civil  proceeding  in  which  damages  because  of "bodily  injury",  "property damage",  or  "personal  and  advertising  injury" to  which  this  insurance  applies  are  alleged…

\*\*\*

SECTION III   COMMON POLICY CONDITIONS  (APPLICABLE TO SECTION I   PROPERTY AND  SECTION II   LIABILITY)

\*\*\*

B.  Changes

This  policy  contains  all  the  agreements  between  you  and  us concerning  the  insurance  afforded.  The first Named Insured shown in the Declarations  is authorized to make changes in the terms of this  policy with our consent. This policy's terms can be  amended  or  waived  only by  endorsement  issued  by us and made a part of this policy.

C.  Concealment, Misrepresentation Or Fraud

This policy is void in any case of fraud by you as it  relates to this policy  at any  time. It is also void  if  you or any other insured, at any time, intentionally  conceals  or  misrepresents  a  material  fact  concerning:

1.  This policy;
2.  The Covered Property;
3.  Your interest in the Covered Property; or
4.  A claim under this policy.

\*\*\*

LIQUOR LIABILITY COVERAGE

A. Liquor Liability Aggregate Limit: $2,000,000
B. Each Common Cause Limit:  $1,000,000

Section II   Liability is amended as follows:
A.  The  insurance  provided  under  Paragraph  A.1. Business  Liability  also

334106835v.1

applies to all "bodily injury" or "property damage" arising out of the selling, serving or furnishing of alcoholic beverages.

B. For the insurance provided by this endorsement only, Paragraph B. Exclusions is amended as follows:

1. Paragraph 1. Applicable To Business Liability Coverages, other than Exclusions a. Expected Or Intended Injury, d. Workers' Compensation And Similar Laws and e. Employer's Liability, does not apply

1. The following exclusions are added:

This insurance does not apply to:

a. "Bodily injury" or "property damage" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

b. "Bodily injury" or "property damage" arising out of "your product". This exclusion does not apply to "bodily injury" or "property damage" for which the insured or the insured's indemnities may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

\*\*\*

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

\*\*\*

C. The following are added to Paragraph D. Liability And Medical Expenses Limits Of Insurance:

D. Liability And Medical Expenses Limits Of Insurance

5. The Liquor Liability Aggregate Limit shown in the Schedule of this endorsement is the most we will pay for all "bodily injury" and "property damage" as the result of the selling, serving or furnishing of alcoholic beverages.

6. Subject to the Liquor Liability Aggregate Limit, the Each Common Cause Limit shown in the Schedule of this endorsement is the most we will pay for all "bodily injury" and "property damage" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of alcoholic beverages to any one person.

Neither the Liability And Medical Expenses Limit of Insurance shown in the Declarations nor its aggregate limits apply to damages arising out of the selling, serving or furnishing of alcoholic beverages.

10

334106835v.1

DECLARATORY JUDGMENT

**Count 1- Declaratory Judgment**
**(No Coverage Due to Late Notice of Claim)**

20.     Accredited realleges incorporates and re-alleges paragraphs 1-19 set forth above as if fully set forth verbatim.

21.     As stated above, the policy requires that the insured "Cooperate with [Accredited] in the investigation or settlement of the claim or defense against the "suit".  Accordingly, upon service of a lawsuit, an insured must "[i]mmediately record the specifics of the claim or 'suit' and the date received; and… Notify [Accredited] as soon as practicable."  The policy further requires that an insured "must see to it that [Accredited receives] written notice of the claim or 'suit' as soon as practicable."

22.     Harkins' motion for entry of default stated that his process server hand delivered the summons and complaint to Benjamin Reyna on February 9, 2024.   Despite multiple opportunities before the entry of default, at no time did El Alamo – or any representative of Harkins – notify Accredited of the lawsuit or the status of the case.

23.     El Alamo breached its contractual duties to Accredited under the policy by its failure to notify the carrier of the underlying lawsuit "as soon as practicable" as required by Section II(E)(2)(a)(2).   Under no circumstances would notice of a claim by the Plaintiff's counsel following entry of default and the initial entry of default judgment be considered "as soon as practicable." El Alamo further breached the policy by failing to cooperate with Accredited.

24.     El Alamo had no excuse or reason not to comply with its duties under the policy in order to maintain coverage for defense and indemnity.

25.     Accredited has been irreparably damaged and prejudiced by El Alamo's non-compliance with the policy terms, namely, the entry of default and the scheduled hearing for the

11

purpose of entering a judgment amount for Defendant Hadley Harkins. More specifically, given that the court in the underlying matter denied El Alamo's motion to set aside the entry of default on April 13, 2026, and scheduled a default judgment hearing for April 20, 2026, all meaningful avenues for potentially avoiding the entry of default judgment against El Alamo have been exhausted, despite Accredited's efforts to the contrary upon learning of the default. As a result of El Alamo's non-compliance with the policy terms, El Alamo has denied Accredited the opportunity to investigate, prepare and present a defense of the underlying lawsuit.

26. Based upon this material non-compliance with policy terms and irrefutable prejudice to Accredited, under 28 U.S.C. § 2201, this Court should declare and enter its judgment that no coverage is available under this policy to indemnify El Alamo for the judgment against it. Accredited further specifically requests that the Court declare and enter its judgment that no coverage is available under the policy to pay any damages awarded to Harkins against El Alamo at the default judgment hearing.

### Count 2- Declaratory Judgment
**(No Coverage Due to Absence of Valid Liquor License)**

27. Accredited realleges incorporates and re-alleges paragraphs 1-26 set forth above as if fully set forth verbatim.

28. The Liquor Liability Coverage Endorsement to Policy no. 1ABPSC05130582800 states that no coverage is available for "'Bodily injury' or 'property damage' arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect."

29. Upon information and belief, on May 30, 2022, the date on which El Alamo's employees allegedly overserved Navarro, the insured premises did not have a valid license to serve alcoholic beverages from the South Carolina Department of Revenue's Licensing division.

334106835v.1

30. If El Alamo served Navarro alcoholic beverages on the date of the accident, then it was a breach of the policy provisions which required a valid license for coverage to apply to this claim.

31. Based upon this breach of a valid, enforceable and material policy provision, under 28 U.S.C. § 2201, this Court should declare and enter its judgment that no coverage is available under this policy to defend the underlying complaint or to indemnify El Alamo for the judgment against it. Accredited further specifically requests that the Court declare and enter its judgment that no coverage is available under the policy to pay any damages awarded to Harkins against El Alamo on April 20, 2026.

WHEREFORE, based upon the foregoing, Accredited Casualty and Surety Company requests final entry of a judgment which:

1. Declares that Accredited Casualty and Surety Company has no duty to defend or indemnify El Alamo for any of the claims alleged in the underlying lawsuit;

2. Declares that Accredited Casualty and Surety Company has no duty to pay any judgment entered against El Alamo to Defendant Hadley Harkins;

3. Grant such other and further relief as is just and proper in the premises.

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**

*/s/ G. Robert DeLoach, III*
G. Robert DeLoach, III, S.C. Federal Bar No. 13252
1122 Lady Street, Suite No. 312
Columbia, SC  29201
(704) 302.1330
robert.deloach@wilsonelser.com
*Attorney for the Plaintiff:*
*Accredited Surety and Casualty Company, Inc.*

April 17, 2026.

334106835v.1